28 F.3d 1213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bassam AL-JABI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 93-3475.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1994.
 
 Before: JONES, RYAN and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Bassam Al-Jabi, a Palestinian native, seeks review of the Board of Immigration Appeals' final order dismissing his appeal of an immigration judge's order and denying his motion to reopen to file for suspension of deportation. Because the Board's decisions to dismiss Al-Jabi's appeal and to deny his motion to reopen were not abuses of discretion, the decision below is AFFIRMED.
 
 I.
 
 2
 Bassam Al-Jabi is a thirty-year-old Palestinian national, born in Lebanon. On August 4, 1985, Al-Jabi was admitted to the United States as a visitor. He has resided here ever since. On July 15, 1986, Al-Jabi married a U.S. citizen, Paula Snoke, and received conditional permanent resident status as a result. The INS denied Al-Jabi's subsequent request to remove his conditional status after it determined that Al-Jabi's marriage was not legitimate. The INS then began deportation proceedings against Al-Jabi on October 19, 1989.
 
 
 3
 Al-Jabi, on April 4, 1990, filed a request for asylum and for withholding of deportation. On July 17, 1990, an immigration judge ("IJ") denied Al-Jabi's request and found that he was deportable, as he was an alien whose conditional permanent resident status had ended.
 
 
 4
 Al-Jabi appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on December 14, 1992. Al-Jabi subsequently filed a Motion to Reopen to Determine Eligibility for Suspension of Deportation, based upon the fact that he had been living in the United States for seven years--a statutory prerequisite for relief. The BIA, on February 10, 1993, dismissed Al-Jabi's appeal and denied his motion to reopen. This petition followed.
 
 II.
 
 5
 A. THE BIA'S DISMISSAL OF AL-JABI'S APPEAL. On February 10, 1993, the BIA dismissed Al-Jabi's appeal of the IJ's decision. Al-Jabi maintains that this dismissal was inappropriate. We review the dismissal for an abuse of discretion, Nazakat v. INS, 981 F.2d 1146, 1148 (10th Cir.1992); Ramirez-Durazo v. INS, 794 F.2d 491, 497 (9th Cir.1986). We find no abuse in the instant case.
 
 
 6
 The Board of Immigration Appeals may dismiss an appeal summarily if an alien has failed to specify the reason for the appeal. This authority is codified at 8 C.F.R. Sec. 3.1(d)(1-a)(i)(A), entitled "Powers of the Board," which states in relevant part:
 
 
 7
 (1-a) Summary dismissal of appeals. (i) Standards. The Board may summarily dismiss any appeal or portion of any appeal in any case in which:
 
 
 8
 (A) The party concerned fails to specify the reasons for the appeal on Form EOIR-26 or Form EOIR 29 (Notices of Appeal) or other document filed therewith.
 
 
 9
 The BIA's ability to dismiss for failure to present an adequate statement of reasons is echoed on the pre-printed notice of appeal form itself, which states "If the factual or legal basis for the appeal is not sufficiently described the appeal may be summarily dismissed." See J.A. at 7 (Notice of Appeal).
 
 
 10
 Moreover, the ability to dismiss for failure to state reasons has been recognized by numerous federal courts. See, e.g., Toquero v. INS, 956 F.2d 193, 195 (9th Cir.1992) (affirming summary dismissal of an appeal where "[r]ather than describing how the evidence established extreme hardship and why the IJ erred, Petitioner makes a generalized and conclusory statement about the proceedings before the IJ."); Nazakat, 981 F.2d at 1148 ("The statement must be specific enough to inform the BIA whether the petitioner is challenging erroneous findings of fact or applications of the law, or both. Where the dispute is on the facts, the particular details contested should be discussed; if a question of law is presented, supporting authority should be cited."); Athehortua-Vanegas v. INS, 876 F.2d 238, 240-41 (1st Cir.1989) ("At the very least, a grievant must tell the Board what aspects of the IJ's decision he contends were wrong, and why."); Martinez-Zelaya v. INS, 841 F.2d 294, 296 (9th Cir.1988) (quotations omitted) ("[S]ummary dismissal by the BIA is appropriate if an alien submits no separate written brief or statement to the BIA and inadequately informs the BIA of what aspects of the IJ's decision are allegedly incorrect and why."); Bonne-Annee v. INS, 810 F.2d 1077, 1078 (11th Cir.1987) ("When a petitioner ... fails to apprise the Board of the specific grounds for his appeal, whether by specifying the reasons in the notice of appeal or by submitting an additional statement or brief, summary dismissal is appropriate.").
 
 
 11
 In the instant case, Al-Jabi filed a four-line Notice of Appeal with the BIA, asserting that the IJ had erroneously decided he had not satisfied his burden with respect to his claim for asylum. This notice stated in relevant part:
 
 
 12
 Respondent/Appellant's testimony and objective evidence presented at trial should establish asylum under INA Sec. 243(h). The trial court erred in holding for the government against the overwhelming weight of the evidence.
 
 
 13
 J.A. at 7. Al-Jabi's four-line statement of reasons did not instruct the Board as to the specific grounds for his appeal. It also did not state which aspects of the IJ's decision were incorrect, nor why. Moreover, Al-Jabi's failure to file a brief with his notice leaves the sketchy reasons given in the notice of appeal as the sole justification for his action. Because Al-Jabi failed to establish an adequate basis for his appeal, the BIA's dismissal was not an abuse of its discretion.
 
 
 14
 B. THE BIA'S DENIAL OF AL-JABI'S MOTION TO REMAND/REOPEN. Al-Jabi next challenges the BIA's denial of his motion to reopen. The Board's denial of a request to reopen is reviewed for an abuse of discretion. INS v. Doherty, 112 S.Ct. 719, 724-25 (1992).
 
 
 15
 In order to succeed on a motion to reopen, the moving party must present new material facts that were not available at the time of the deportation hearing. 8 C.F.R. Secs. 3.2, 3.8, 103.5 and 242.22. Thus, for example, where the moving party seeks to reopen his deportation proceedings in order to apply for asylum, he must establish "a prima facie case of either a clear probability or a well-founded fear of persecution by material evidence that was not available at the time of his deportation proceedings." Dolores v. INS, 772 F.2d 223, 226 (6th Cir.1985). In addition, reopening will not be granted if the moving party cannot make "a prima facie showing that the statutory requirements for the relief sought have been met." Id. at 225 (quoting Matter of Garcia, 16 I & N Dec. 653, 654 (BIA 1978). The statutory requirements for suspension of deportation are enumerated at 8 U.S.C. Sec. 1254(a)(1).[1] One of these statutory requirements is that the potential deportee must be a person of good moral character for a continuous period of at least seven years prior to the request for a suspension of deportation. Under 8 U.S.C. Sec. 1101(f)(6), an alien cannot be found to be of good moral character if he or she has given false testimony for the purpose of gaining benefits under the Immigration and Nationality Act.[2]
 
 
 16
 In the instant case, Petitioner failed to satisfy the statutory prerequisites for a suspension of deportation. Al-Jabi admittedly gave false testimony under oath during an INS interview in April 1989, regarding his marriage to Paula Snoke. J.A. at 5-6. Consequently, the Board concluded that Al-Jabi had not shown himself to be a person of good moral character for the past seven years, and it denied his motion to reopen. We cannot find, in light of the facts, that this decision was an abuse of discretion.
 
 
 17
 On appeal, Al-Jabi does not directly challenge the Board's conclusion, but instead asserts that he should have been given a hearing in which he could rebut the finding of the Board that he was of bad moral character. The failure to provide such a hearing, Al-Jabi asserts, is a violation of due process. However, Al-Jabi's claim is unpersuasive.
 
 
 18
 Aliens clearly have a constitutional right to a fundamentally fair deportation hearing. Bustos-Palacio v. INS, 898 F.2d 1053, 1055 (5th Cir.1986). Al-Jabi received a deportation hearing and has not challenged the fairness of this hearing nor asserted that the hearing was constitutionally deficient in any way. Instead, Al-Jabi now asserts that the failure of the BIA to provide an additional hearing prior to denying his motion to reopen was unconstitutional. Al-Jabi has failed to direct this court to any constitutional, statutory, or regulatory provision supporting his demand for a reopening hearing; and we cannot discern any need for one. Accordingly, where Al-Jabi received his "day in court" by means of a fair deportation hearing, his demand for an additional hearing is denied.
 
 III.
 
 19
 For the reasons stated, we AFFIRM the decision of the Board of Immigration Appeals.
 
 
 
 [1]
 (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who applies to the Attorney General for suspension of deportation and--
 (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence....
 8 U.S.C. Sec. 1254(a)(1) (emphasis added).
 
 
 [2]
 (f) For the purposes of this chapter--
 No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
 (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter.
 8 U.S.C. Sec. 1101(f)(6).